UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KEITH L. BIRD, | ) |  |
|---|---|---|
| Petitioner, | ) ) ) |  |
| v. | ) ) | Nos. 3:20-CV-114 |
|  | ) | 3:17-CR-013 |
| UNITED STATES OF AMERICA, | ) ) |  |
| Respondent. | ) |  |

## **MEMORANDUM OPINION**

Before the Court is Keith L. Bird's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 573].[1] The United States has responded in opposition [Doc. 7], and Petitioner filed a reply [Doc. 8]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 573] will be **DENIED**.

**I.    BACKGROUND**

In April 2017, Petitioner and sixteen co-defendants were charged in a seven-count superseding indictment pertaining to conspiracy and distribution of 50 grams or more of methamphetamine, related gun charges, and forfeiture allegations. [Crim. Doc. 15]. Petitioner was named in four counts. [*See id.*].

---

[1] Document numbers not otherwise specified refer to the civil docket.

On September 18, 2017, Petitioner entered into a plea agreement with the government. [Crim. Doc. 242]. Petitioner agreed to plead guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) and one count of knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). [*See id*.] The plea agreement was signed by Petitioner and attorney Paula R. Voss ("Attorney Voss").

In his plea agreement, Petitioner acknowledged that between Spring 2016 and February 28, 2017, he was involved in a methamphetamine distribution conspiracy in the Eastern District of Tennessee. Petitioner would travel with co-defendants to Atlanta, Georgia to purchase methamphetamine to bring back to his property known as "The Farm" in Friendsville, Tennessee for resale. Petitioner also admitted that he possessed a firearm during drug transactions and had a firearm and methamphetamine in his possession when he was arrested on February 28, 2017, in Knoxville, Tennessee. [*Id*. at 2-3]. Petitioner agreed that he would be held responsible for a base offense level of 34, based on his personal distribution of *at least* 1 kilogram of actual methamphetamine and that the leadership enhancement provisions in U.S.S.G. § 3B1.1 did not apply. [*Id*. at 3] (emphasis added). Petitioner also agreed that he would not file a motion for downward departure or variance and acknowledged that the Court would impose sentencing. [*Id*. at 4 & 7].

The Court conducted a change of plea hearing on October 12, 2017. According to the transcript of the hearing [Crim. Doc. 562], Petitioner was arraigned and specifically advised of his rights, and he attested that he did not receive any promises of leniency or a

2

lighter sentence by pleading guilty. Petitioner was also informed by the Court that his motion to change his plea to guilty for Counts 1 and 7 of the Superseding Indictment was granted, that he would be referred for a Presentence Investigative Report ("PSR"), that he faced a mandatory minimum sentence of at least 10 years and up to life for Count 1 and a mandatory minimum sentence of at least 5 years and up to life to be served consecutively for Count 7, and that he would remain in custody until his sentencing hearing. [*Id*.].

The PSR calculated a total offense level of 33 and a criminal history category of VI, resulting in a guideline range of 235 to 293 months. [Crim. Doc. 540, ¶ 98]. However, Count 7 required that the sentence for that Count run consecutive to any other counts and carried a mandatory minimum term of imprisonment of 5 years, making Petitioner's effective advisory guideline range of 295 to 357 months. [*Id*.].

The Government filed a notice of no objections to the PSR. [Crim. Doc. 501]. The Government also filed a sentencing memorandum wherein it concurred that the correct advisory guideline calculation was 295 to 357 months imprisonment and reserved the right to present evidence and argument at the sentencing hearing as it deemed appropriate. [Crim Doc. 502].

Petitioner, through counsel, filed a notice of objections to the PSR, objecting to the enhancement for maintaining a premises for manufacturing or distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12). [Crim. Doc. 522]. Petitioner, through counsel, also filed a sentencing memorandum, requesting a bottom of the guidelines range sentence based on the 18 U.S.C. § 3553 factors. [Crim. Doc. 527].

3

On July 31, 2018, the Court held a sentencing hearing and heard testimony and proof regarding Petitioner's objection to the enhancement. [Crim. Doc. 535]. The Court continued the hearing to allow the parties to provide further briefing on the issue of the enhancement. [*Id*.]. On December 20, 2018, after reviewing the additional briefing by the Parties and hearing additional argument, the Court sentenced Petitioner to a total of 295 months' imprisonment, 235 months for Count 1 and 60 months, to be served consecutively, for Count 7, followed by five years of supervised release. [Crim. Doc. 553]. Petitioner filed a direct appeal the same day [Crim. Doc. 556], but he was allowed to voluntarily withdraw his appeal by the Court of Appeals on March 1, 2019. [Crim. Doc. 564]. On March 12, 2020, he filed this § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's

5

allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner raises six claims of ineffective assistance of counsel in this § 2255 motion for: 1) failing to communicate with Petitioner about the PSR, 2) improperly pushing Petitioner to accept the plea agreement, 3) failing to properly investigate his case pretrial, 4) failing to negotiate a better plea offer, 5) not filing substantive objections to the PSR, and 6) not arguing for mitigation of punishment at sentencing. [Doc. 1; Crim. Doc. 573].

#### A. Legal Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is

6

"reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### B. Timeliness

As a preliminary matter, the Government asserts that Petitioner's motion is untimely as the one-year period of limitations applies to Petitioner's motion. [Doc. 7]. Under 28 U.S.C. § 2255, Petitioner's limitation period runs from the latest of four dates – 1) the date when the judgment of conviction is finalized, 2) the date an impediment by government action is removed if applicable, 3) the date the asserted right was initially recognized by the Supreme Court or the date when a newly recognized right is made retroactively

applicable, and 4) the date when the facts surrounding the claim(s) could have been discovered through due diligence. Here, Petitioner does not assert a newly recognized right, nor does he assert any impediment by government action keeping him from timely filing this § 2255 motion. Therefore, the appropriate limitations date is the later date of when Petitioner's judgment became final or when the facts supporting the claim could have been discovered.

Petitioner's claims are based on facts surrounding his plea agreement, the application of the sentencing guidelines, and the facts contained in the PSR. These are facts which could have been discovered prior to Petitioner's sentencing hearings in July 2018 and December 2018, through the exercise of due diligence. Thus, the appropriate date is the date when Petitioner's judgment became final.

Petitioner asserts that his motion was timely filed because his judgment did not become final until after the 90-day period for filing a *certiorari* petition to the Supreme Court expired. [Doc. 8, p. 4]. The United States asserts that because Petitioner voluntarily dismissed his appeal, there is no legal basis to seek *certiorari* from an appeal that was withdrawn voluntarily. [Doc. 7, p. 4]. Petitioner's judgment became final March 1, 2019, when Petitioner's appeal was voluntarily dismissed by the Court of Appeals and is the date the Court will use in determining timeliness of the motion. *See Gomez v. United States*, 1:06-cr-30, 2010 WL 1609412, at *2 (E.D. Tenn. Apr. 20, 2010); *see also Craddock v. Mohr*, No. 99-3756, 2000 WL 658023, at *1 (6th Cir. May 8, 2000). As Petitioner filed the instant motion March 12, 2020, beyond the one-year period of limitations provided in 28 U.S.C. § 2255(f)(1), his motion is untimely, absent the applicability of equitable tolling.

8

Equitable tolling "allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). The AEDPA limitations period may be subject to equitable tolling if the movant shows that (1) extraordinary circumstances beyond his control made timely filing of a federal habeas petition impossible and (2) the movant has acted diligently in pursuing his rights. *Holland v. Florida*, 560 U.S. 631, 649 (2010). "[T]he doctrine of equitable tolling is used sparingly by federal courts," *Robertson*, 624 F.3d at 784, and the movant bears the burden of showing that equitable tolling is appropriate. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).

To demonstrate in this case that he is entitled to equitable tolling, Petitioner must establish that he has pursued his rights diligently and that some extraordinary circumstance prevented timely filing. *Holland*, 560 U.S. at 649. Petitioner has not attempted to show that any extraordinary circumstance existed or prevented him from timely raising the claims contained in his § 2255 motion or that he had been pursuing his rights diligently. Because Petitioner has not established that he was unable to timely file his § 2255 motion to vacate due to extraordinary circumstances beyond his control, the Court need not address the diligence prong of the equitable tolling test. Accordingly, Petitioner's § 2255 motion will be **DENIED** as untimely.

**C. Merits**

Even if Petitioner's motion had been timely, he still would not prevail on the merits of his ineffective assistance claims.

   1. **Claims 3 & 4**

Petitioner's Claims 3 and 4 – that his attorney did not investigate properly and did not negotiate for a better plea offer are conclusory statements. These two claims also lack specific factual support and fail to establish how counsel's alleged ineffectiveness prejudiced Petitioner in any way. Petitioner has not specified what his counsel may have discovered through further investigation or how further investigation would have affected the outcome of his case. As a result, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

Similarly, Petitioner has not established what more counsel could have done to obtain a more favorable plea agreement. A criminal defendant has "no constitutional right to plea bargain," let alone a constitutional right to a "more favorable" plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The law is well-settled that dissatisfaction with a plea deal does not rise to a showing of constitutionally ineffective counsel. *See,* e.g., *Hunter*, 160 F.3d at 1115 ("[W]hile [petitioner] may later have decided that he could have done better, his dissatisfaction does not rise to a showing of constitutionally ineffective counsel"); *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010) ("[W]hether a petitioner 'could have negotiated a better plea deal is irrelevant in the ineffective assistance context.'") (quoting *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006)). Even if Petitioner's attorney had negotiated a "more favorable" plea, Petitioner

10

has not shown that the result would have been different. Counsel cannot be held responsible for the Government's decisions to offer a specific plea agreement and the consequences thereof. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner's ineffective assistance of counsel Claims 3 and 4 fail on their merits and will be **DENIED**.

### 2. *Claims 1, 2, 5, & 6*

Petitioner's remaining Claims – 1) that his attorney failed to communicate with him about the PSR, 2) improperly pushed him into accepting the plea agreement, 5) failed to properly object to the PSR, and 6) failed to argue mitigating factors at sentencing are directly contradicted by the record and are not credited. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

First, Petitioner testified in Court on several occasions that he was satisfied with his counsel and that counsel had adequately communicated with him regarding the PSR. *See* [Crim. Doc. 538, pp. 3-6]; [Crim. Doc. 562, pp. 4-5]. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Further, in Petitioner's memorandum supporting his § 2255 motion, he states that Attorney Voss did discuss both the PSR and the objection to the enhancement filing with him. [Doc. 2, pp. 24-24]. Accordingly, Petitioner is not entitled to relief as to Claim 1.

11

Second, a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). At the plea hearing, the Court went into great detail with Petitioner regarding the nature of the plea agreement, the possible consequences of the plea agreement, and the potential sentence Petitioner was facing. [Crim. Doc. 562]. Petitioner indicated that he still wished to plead guilty to the offense. [*Id.*]. Even if Petitioner's counsel had failed to explain the effects of the Plea Agreement and the potential sentence and "pushed" Petitioner to accept the plea agreement, Petitioner has not established prejudice from any of counsel's alleged failures. The record indicates that Petitioner was advised by the Court of the nature and consequences of the Plea Agreement, and the potential sentence Petitioner was facing before accepting his change of plea. [*Id.*]. Accordingly, Petitioner is not entitled to relief as to Claim 2.

Finally, contrary to Petitioner's allegations, counsel did file a notice of objections to the PSR and objected to the U.S.S.G. § 2D1.1(b)(12) enhancement for maintaining a premises or manufacturing or distributing a controlled substance. [Crim. Doc. 522]. Counsel also filed a sentencing memorandum arguing for a bottom of the guidelines sentence, specifically discussing mitigating factors such as his family history, addiction issues, and his remorse and willingness to take responsibility for his actions. [Crim. Doc. 527]. Although the Court overruled Petitioner's objection, Petitioner's counsel cannot be deemed ineffective for doing precisely what Petitioner now claims she should have done.

Petitioner also alleges that his counsel was ineffective for failing to file a motion for downward departure or variance and not objecting to Petitioner being held accountable for 1.5 kilogram of methamphetamine. [Doc 2, pp. 26, 29]. However, in his plea agreement, Petitioner specifically agreed not to file a motion for downward departure or variance and specifically agreed to be held responsible for the distribution of at least 1 kilogram of methamphetamine. [Crim. Doc. 242, pp. 3, 7]. An objection regarding the drug weight attributable to Petitioner or a motion for a downward departure or variance would have been frivolous due to the specific terms of the plea agreement. Counsel cannot be deemed ineffective for not raising frivolous arguments. *Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003). Accordingly, Petitioner is not entitled to relief as to Claims 5 and 6.

Further, Petitioner has not alleged that he would not have pled guilty or proceeded to trial but for counsel's mis-advice. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner's ineffective assistance of counsel Claims 1, 2, 5, and 6 also fail on their merits and will be **DENIED**.

IV. **CONCLUSION**

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 573] will be **DENIED** and **DISMISSED**.

V. **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

    **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge